UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEEDAD TREOLA ROBERSON,<br><br>    Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>    Defendant. | Case No. CV 16-05455-KES<br><br>**MEMORANDUM OPINION AND ORDER** |

Racheedad Treola Roberson ("Plaintiff") appeals the final decision of the Social Security Commissioner denying her application for supplemental security income ("SSI"). For the reasons stated below, the Commissioner's decision is AFFIRMED.

## I.
## BACKGROUND

Plaintiff applied for SSI alleging disability beginning on November 1, 2010. Administrative Record ("AR") 10. A hearing was held before an administrative law judge ("ALJ") on February 24, 2014. AR 25-60. A second hearing was held

1

on November 17, 2014, before a different ALJ. AR 61-101. The second ALJ issued a decision denying benefits on December 8, 2014. AR 7-24.

## II.
## STANDARD OF REVIEW

### A. Substantial Evidence and Harmless Error.

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

### B. The Five-Step Evaluation Process.

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The ALJ follows a five-step sequential evaluation process in assessing

whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id.

§§ 404.1520, 416.920; Lester, 81 F.3d at 828 n. 5; Drouin, 966 F.2d at 1257.

**C. The ALJ's Application of the Five-Step Evaluation Process.**

At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since her alleged onset date and, in fact, had never worked. AR 13. At step two, the ALJ determined that Plaintiff had no severe physical impairments, but the following severe mental impairments: "bipolar disorder and polysubstance dependence, in remission." AR 13. At step three, the ALJ determined that these impairments, or the combination thereof, did not meet or medically equal the severity of one of the impairments in the Listing. AR 14.

At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: "She is limited to occasional detailed or complex tasks. She can have frequent contact with coworkers, supervisors and the general public. She would have 5 to 10 percent reduction in maintaining concentration and attention spread out over a normal workday. She also requires a low stress environment." AR 15.

At step five, relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could work as a photocopy machine operator, mail clerk/sorter, or laundry worker, and that a significant number of such jobs existed nationally. AR 19. The ALJ therefore concluded that Plaintiff was not disabled. AR 20.

**III.**

**ISSUES PRESENTED**

Issue One: Whether the ALJ failed to (1) properly consider the opinion of consultative examiner Dr. Bagner and (2) fully and fairly develop the record.

Issue Two: Whether the ALJ posed a hypothetical question to the VE that included all the limitations in Plaintiff's RFC. (Dkt. 20 ["JS"] at 2.)

# IV.
# DISCUSSION

## A. The ALJ Accounted for Dr. Bagner's Opinions in Plaintiff's RFC.

### 1. Applicable Law.

Social Security regulations explain that the terms "marked" and "moderate" are part of a "five-point" scale for rating a claimant's degree of functional limitation. 20 C.F.R. § 404.1520a(c)(4). The five limitations ratings are "none, mild, moderate, marked, and extreme." (Id.) A rating of "extreme" represents "a degree of limitation that is incompatible with the ability to do any gainful activity." (Id.) A "marked" limitation indicates a "degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C). In other words, a "marked" limitation means that the "ability to function in this area is seriously limited, but not precluded." Timofeeva v. Colvin, 2016 U.S. Dist. LEXIS 31157, *17 (E.D. Cal. Mar. 9, 2016).

A "moderate" limitation is less serious than a "marked" one. The Hearings Appeals and Litigation Law Manual ("HALLEX"), an internal agency guide, requires that when an ALJ requests a consultative examination, the ALJ should provide the corresponding state agency with a "medical source statement form." Serna v. Astrue, 2008 U.S. Dist. LEXIS 99610, at *7 (C.D. Cal. Dec. 9, 2008) (citing HALLEX I-2-5-20). Form HA-1152, the Medical Assessment of Ability to do Work-Related Activities (Mental), provides definitions for the ratings of none, slight, moderate, marked, and extreme. Per the form, a moderate rating is defined as "there is moderate limitation in this area but the individual is still able to function satisfactorily." Id. (holding ALJ adequately accounted for "moderate" limitations in various areas of mental functioning by limiting claimant's RFC to "simple, repetitive tasks" and "limited public contact"); see also Henderson v. Colvin, 2016 U.S. Dist. LEXIS 1975, at *11 (E.D. Cal. Jan. 7, 2016) (same).

Many cases have held that moderate limitations in various areas of mental functioning do not preclude work. See, e.g., Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) ("We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."); Edelbrock v. Comm'r of SSA, 2013 U.S. Dist. LEXIS 53681, at *16 (E.D. Cal. Apr.15, 2013) ("Significantly, a limitation to simple tasks incorporates moderate limitations in several areas of cognitive functioning."); Vaughn v. Colvin, 2015 U.S. Dist. LEXIS 121530, at *18 (C.D. Cal. Sept. 11, 2015) ("[A] moderate limitation in a certain area does not require the ALJ to find that plaintiff has no ability to function at all in that area.")

While terms like mild, moderate, marked, and extreme are used to describe the severity of functional limitations, RFC determinations typically use vocational terms such as occasional, frequent, and constant, because they describe the amount of time a claimant can do a certain task. See, Social Security Ruling ("SSR") 83-10, 1983 SSR LEXIS 30. "Occasionally" means occurring from very little up to one-third of the time. Id. at *13. Occasional is the most restrictive category next to a preclusion. "Frequently" means occurring from one-third to two-thirds of the time. Id. at *14. Because an RFC considers the claimant's work capacity, to formulate an RFC, the ALJ must translate the claimant's impairments, as identified in the medical evidence with varying levels of severity, into a concrete description of "the most" the claimant can do, despite any limitations. 20 C.F.R. § 416.945(a).

**2. The ALJ's Treatment of Dr. Bagner's Opinions.**

On February 13, 2013, Ernest A. Bagner, M.D., a board-certified psychiatrist, performed a psychiatric evaluation of Plaintiff. AR 331-335. Dr. Bagner diagnosed Plaintiff with Bipolar Disorder, not otherwise specified. AR 334. Under his report's "Functional Assessment" section, Dr. Bagner opined that Plaintiff was "moderately" limited in her ability to follow detailed instructions, interact

6

appropriately with the public, co-workers and supervisors, comply with job rules such as safety and attendance, and perform daily activities. AR 334. Dr. Bagner also found that Plaintiff would be "markedly" limited in her ability to respond to changes in a routine work setting and respond to work pressure in a usual work setting. Id.

The ALJ gave "reasonable" weight to both the opinions of Dr. Bagner and Dr. Chehrazi, a psychologist who evaluated Plaintiff's mental health later in June 2014. AR 18. The ALJ gave "greater weight to the opinion of Dr. Bagner because Dr. Chehrazi noted that it was difficult to assess [Plaintiff's] mental abilities due to her poor effort during the examination." AR 18.

The ALJ found that Plaintiff suffers from the severe impairment of bipolar disorder, consistent with Dr. Bagner's diagnoses. AR 13. The ALJ attempted to account for the three work-related "moderate" limitations found by Dr. Bagner in Plaintiff's RFC, as follows:

| Moderate Limitations (AR 334) | RFC (AR 15) |
| --- | --- |
| Following detailed instructions | Limited to occasional detailed or complex instructions |
| Interacting appropriately with the public, co-workers, and supervisors | Limited to frequent contact with co-workers, supervisors and the public |
| Complying with job rules such as safety and attendance | 5-10% reduction in maintaining concentration and attention over the workday; low stress work environment |

The ALJ also attempted to account for the two "marked" limitations found by Dr. Bagner, (i.e., the ability to respond to changes in a "routine work setting" and respond to work pressure in a "usual work setting") by restricting Plaintiff to work in a "low stress" work environment where she can be inattentive 5-10% of the time,

7

have less-than-constant contact with others, and only face details or complexities "occasionally." AR 15.

The ALJ's ultimate finding that Plaintiff could work as a photocopying machine operator, mail clerk/sorter, or laundry worker was based on a hypothetical question posed to the VE that was identical to Plaintiff's RFC. Compare AR 15 and AR 96-98.

### 3. Analysis.

Plaintiff argues that the ALJ "disregard[ed] … the marked and moderate limitations found by Dr. Bagner" causing the ALJ to formulate an erroneous RFC for Plaintiff. JS at 20.

The Court disagrees. The ALJ adequately accounted for the marked and moderate limitations found by Dr. Bagner by adding relevant restrictions to Plaintiff's RFC and the hypothetical question posed to the VE. Plaintiff has not set forth any arguments as to why the limitations in either the RFC or the hypothetical do not adequately address Dr. Bagner's findings.

**B. The ALJ was Not Required to Further Develop the Record.**

### 1. Applicable Law.

The claimant bears the burden of producing evidence to support a finding of disability. See 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). The Code of Federal Regulations further explains:

> [Y]ou have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained

basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a); accord 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled").

Nevertheless, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (holding duty not met where ALJ proceeded without a hearing). This duty, however, is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). When triggered, the ALJ may discharge this duty in several ways, including: "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

**2. Factual Background.**

Dr. Avazeh Chehrazi, Ph.D., completed a psychiatric evaluation of Plaintiff in June 2014. AR 457-62. Dr. Chehrazi noted Plaintiff was a "suboptimal historian" who provided vague and brief responses, only "passively cooperated" and "put forth poor effort." (AR 17, 457). Dr. Chehrazi administered a Wechsler Adult Intelligence Scale test from which he determined that Plaintiff's full scale IQ was 41, but he deemed the results "invalid …due to poor effort."[1] AR 461. Dr. Chehrazi further noted that because of Plaintiff's poor effort, "it is difficult to comment on her work-related abilities." AR 461. Still, Dr. Chehrazi found Plaintiff would have "no difficulty" to "understand, remember and carry out short, simplistic instructions" and only moderate difficulty following detailed, complex instructions. AR 462.

**3. Summary of Arguments.**

Plaintiff contends that the ALJ failed to "fully and fairly develop the record by not stating whether he accepted or rejected the claimant's full-scale IQ score of 41." JS at 5. According to Plaintiff, "the ALJ should have requested an additional assessment of the claimant's full scale IQ instead of dismissing the findings without any further evaluation." Id.

The Commissioner counters that Plaintiff received two hearings to present evidence, first on February 24, 2014, and then again on November 17, 2014. AR 25-60, 61-101. Plaintiff's psychological records were reviewed by 5 doctors: examining doctors Ernest A. Bagner III, M.D. (AR 331-36) and Avazeh Chehrazi,

---

[1] As a comparison, an IQ of 108 would be considered average. Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 672 (9th Cir. 2011). An IQ of 77 is considered "borderline mental retardation." Schneider v. Comm'r of SSA, 223 F.3d 968, 971 (9th Cir. 2000). Someone with "an IQ of approximately 40 [has] the mental capacity of a four or five-year-old." Smith v. City of Stockton, 185 F. Supp. 3d 1242, 1243 (E.D. Cal. 2016).

10

Ph.D. (AR 457-62), testifying psychological expert Dr. David Peterson (AR 49-55), and reviewing doctors Dara Goosby, Psy.D. (AR 110) and Preston Davis, Psy.D. (AR 112-17).

In addition, Plaintiff was represented by counsel prior to the ALJ hearing and decision. AR 167, 195. At the second ALJ hearing, the ALJ asked Plaintiff's counsel if he had reviewed the evidence, whether there was any evidence to add, or whether there was any evidence Plaintiff's counsel "was aware of that would be relevant to this case." AR 64-65. Plaintiff's counsel stated he had reviewed the evidence and there was no additional, relevant evidence, after which the ALJ entered the evidence into the record. AR 65.

Considering this history, the Commissioner characterizes as "disingenuous" Plaintiff's argument that the ALJ failed to develop the record. JS at 8. Plaintiff's counsel was aware of Dr. Chehrazi's report noting the invalid IQ testing at the second hearing. Plaintiff's counsel nevertheless stated that he was unaware of any further need to develop the record. AR 65. The Commissioner further argues that remand for further IQ testing would likely be futile, given Plaintiff's noted non-compliance and poor efforts as noted by Dr. Chehrazi and Dr. Peterson.[2] JS at 8.

**4. Analysis.**

There is no ambiguity that Dr. Chehrazi could have clarified had he been subpoenaed or sent written questions. Rather, he clearly stated that the results of the IQ testing he performed were "deemed invalid" because of Plaintiff's "poor effort" on the test. AR 61. He opined that individuals functioning in the range indicated by Plaintiff's test scores "would have obvious deficits which were not

---

[2] Dr. Peterson noted records showing Plaintiff did not take her medication for two months (citing AR 403) and contrasted this with her hearing testimony that she "always" takes her medication (AR 33). AR 51. He also commented on records showing a history of missed appointments and her refusal to attend therapeutic groups in jail. AR 51-52.

11

seen" as he interacted with Plaintiff. Id. Similarly, the ALJ properly concluded there was no need to continue the hearing yet again or keep the record open to allow supplementation of the record, because counsel affirmed at the second hearing that there was no need for additional evidence. AR 65.

Plaintiff's argument boils down to an assertion that the ALJ had a legal duty to order another round of tax-payer-funded IQ testing in the hope that Plaintiff would make a sincere effort the second time around so that the test would yield accurate results. The ALJ's duty to develop the record fully and fairly does not extend so far.

## C. The Hypothetical Posed to the VE Encompassed Plaintiff's RFC.

### 1. Factual Background.

The ALJ asked the VE to consider a hypothetical person in Plaintiff's age category with limited education and no work experience. AR 96. The hypothetical person was further defined as having "no physical limitations" but her mental impairment would allow her "to do detailed or complex tasks occasionally, not frequently." Id. The person could "deal with co-workers, supervisors, and the general public frequently, not constantly". Id. Additionally, the person would have reduced concentration for 5-10% of the workday, and needs a low stress work environment. AR 97-98.

The VE opined that this hypothetical person could perform the following three jobs which are all light, unskilled work requiring a reasoning level of $2^3$: (1) mail clerk/sorter (DOT 209.587-026); (2) laundry worker (DOT 302.685-010); and (3) photocopying machine operator (DOT 207.685-014). AR 98-99.

---

[3] The DOT classifies the reasoning skills required to perform different jobs using a scale of 1 to 6. A limitation to only "simple, routine tasks" is consistent with reasoning level 2. Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015).

12

**2. Analysis.**

Plaintiff contends that in the hypothetical posed to the VE, the ALJ "failed to mention Dr. Bagner's opinion that Plaintiff was moderately limited in her ability to follow detailed instruction, interact appropriately with the public, co-workers and supervisors, comply with job rules such as safety and attendance, and daily activities." JS at 12.

The Court disagrees. As discussed above, the ALJ accounted for moderate difficulty following detailed instructions by limiting Plaintiff to only occasional detailed or complex tasks. All the jobs discussed by the VE require only reasoning level 2. AR 98-99. The ALJ accounted for moderate difficulty interacting with others by restrictions in the hypothetical to frequent, as opposed to constant, interaction with co-workers, supervisors, and the public. AR 96. The ALJ accounted for Plaintiff's moderate limitation in complying with job rules such as safety and attendance by limiting Plaintiff to a "low stress" job environment. A "low stress" job environment does not require perfect vigilance in adhering to safety rules to maintain a safe workplace. Indeed, Plaintiff's RFC allows her to be inattentive 5-10% of the workday. Furthermore, by including multiple restrictions that would reduce the stress normally associated with working, the ALJ reduced the stress that might otherwise cause Plaintiff to miss work.

In sum the ALJ's determination that Plaintiff's mental impairments would not prevent her from working as a mail clerk/sorter, laundry worker, or photocopy machine operator is supported by substantial evidence.

//
//
//
//
//

## V.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: March 29, 2017

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE